**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-23812-Civ-TORRES

DANJRIAL BECK,

*Plaintiff*,

v.

INTEGRITY MARKETING GROUP, LLC,

*Defendant*.
_______________________________________/

## ***ORDER ON MOTION TO DISMISS***

This motion ("the Motion") asks this Court to dismiss the Amended Complaint ("Amended Complaint") [D.E. 26] as an impermissible shotgun pleading and for failure to state claims for relief under Rule 12(b)(6), or alternatively to require a more definite statement under Rule 12(e). [D.E. 29]. The Plaintiff ("Plaintiff" or "Beck") has responded to the Motion [D.E. 30], to which Defendant has replied, [D.E. 31]. The parties have consented to the jurisdiction of the undersigned Magistrate Judge. *See* 28 U.S.C. § 636(c). Having reviewed the record, the Court concludes that the Amended Complaint remains an impermissible shotgun pleading. Therefore, the Motion is GRANTED in part and DENIED in part.

## *I. BACKGROUND*

Plaintiff alleges a series of workplace disputes with supervisors and human-resources staff at her employer, Integrity Marketing Group, LLC ("Defendant").[1] Plaintiff, a licensed insurance agent, was employed by Defendant during the incidents giving rise to the Amended Complaint. [D.E. 26 at 2]. Plaintiff invokes violations of or under the "Equal Employment Opportunity Act, [e]mployment discrimination, retaliation and [c]ivil [r]ights violations under [f]ederal [l]aw." [*Id.* at 3].

On July 2, 2026, the Court dismissed the first complaint ("Original Complaint") [D.E. 1] without prejudice. [D.E. 24]. In its dismissal, the Court found that Plaintiff had "engaged in an impermissible shotgun pleading that has failed to provide the Defendant with proper notice of the allegations against which it must defend." [*Id.* at 10]. In particular, the Original Complaint "fail[ed] to incorporate prior paragraphs, connect any cause of action to any specific pled facts, and likely include[d] superfluous information (at least to a material degree)." [*Id.* at 9]. Because the Original Complaint was a shotgun pleading, the Court declined to address the "various substantive problems" it contained. [*Id.* at 10]. Because the Amended Complaint is again an impermissible shotgun pleading, the Court again does not reach the merits, though it notes below several substantive problems that would impede the Amended

---

[1] Defendant represents that it was erroneously named as Integrity Marketing Group, LLC and that Plaintiff's employer is Integrity, LLC. [D.E. 29 at 1 n.1]. Any subsequent amended complaint should name the correct entity.

Complaint's viability even if it were properly pleaded. The substantive problems noted below are not exhaustive and should not be read as such.

## *II. ANALYSIS*

The Court set out the governing standards in its prior Order, [D.E. 24 at 6–8], and applies them here. In short, a complaint must allege enough facts, accepted as true, to make a claim for relief plausible rather than merely possible, and labels and legal conclusions do not count toward that showing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiff proceeds *pro se*, the Court construes her filings liberally, but that leniency does not excuse compliance with Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," nor does it permit the Court "to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Fed. R. Civ. P. 8(a)(2); *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). The Court's review is confined to the Amended Complaint; new facts and exhibits offered for the first time in Plaintiff's response, [D.E. 30], cannot amend it. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Although the Amended Complaint does not label its claims, Defendant argues that Plaintiff "may be attempting to assert claims for" (1) race discrimination, (2) age discrimination, (3) violation of the Americans with Disabilities Act, (4) retaliation, and (5) hostile work environment. [D.E. 29 at 2]. Defendant argues that "[n]one of

these claims are properly pleaded." [*Id.*]. As explained below, the Court agrees with Defendant's reading of the claims Plaintiff appears to assert.

The Eleventh Circuit has identified four types of shotgun pleadings: when each count in a complaint adopts all the preceding counts; the superfluous inclusion of conclusory or irrelevant information; failure to demarcate each cause of action as distinct; and failing to identify which defendant[s] in an action with multiple defendants, is allegedly responsible for the demarcated cause of action. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Beckwith v. Bellsouth Telecommunications, Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) ("The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"). Because each type deprives the defendant of fair notice, any one of them supports dismissal, and a district court has inherent authority to dismiss a shotgun pleading on that basis alone. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Before dismissing a pro se plaintiff's complaint with prejudice, however, the Court must ordinarily give her at least one chance to amend where a more carefully drafted complaint might state a claim. *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

The Amended Complaint is fatally flawed. First, Federal Rule of Civil Procedure 10(b) requires a party to state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." The Amended Complaint fails on both grounds, and the Court flagged the same defect in the Original Complaint. [D.E. 24 at 10].

Perhaps more importantly, Plaintiff again filed a shotgun pleading. Like the Original Complaint, it is the second and third types identified in *Weiland* that are present in the Amended Complaint. Each count is a chronological narrative of workplace events that ends with a list of statutes and phrases, and no count identifies which of its facts support which legal theory. The problem is not that the counts fail to incorporate one another; it is that, within any single count, the reader cannot tell what claim is being made or which facts are meant to support it. Plaintiff makes no attempt to isolate the elements of a claim. For example, the end of Count I states the following, each clause with a line break: "VII Civil Rights Act 1964, VII Retaliation, April 14th, 2022 incident, Hostile Work Environment." [D.E. 26 at 5]. However, it is not clear what Defendant allegedly did in retaliation on or because of what happened on April 14, 2022. Further, there are a litany of other dates and actions described under Count I, including events on April 5, 2022; April 26, 2022; May 2022; June 2022; July 19, 2022. Plaintiff indeed describes actions on those dates, some committed by her and others by other employees, but it is exceedingly difficult to understand

how the different dates or actions connect or bolster a cause of action, presumably for retaliation or a broad accusation of a Title VII violation.[2]

In Counts I and II, Plaintiff describes two situations which she was called for jury duty (first in 2022 and second in 2024) and provided her employers with documentation describing her duty. In both situations, despite receiving the documentation, Defendant's employees marked Plaintiff as absent without cause. [D.E. 26 at 4, 6]. Plaintiff, however, does not state that she was adversely affected by Defendant's labeling, instead only listing potential punishments, such as termination, which she does not allege to have received. [*Id.*]. Nor does the Amended Complaint suggest that either designation had any negative effect on her employment, and the two episodes occurred more than four years and more than two years, respectively, before this Order. Furthermore, she fails to allege any racial motivation or animus for her alleged mistreatment.

Count III appears to be a claim for failure to accommodate for a disability, but it does not identify a disability. [D.E. 26 at 6]. Count I alleges that Plaintiff fell at work in April 2022, injuring her wrist, hand, and leg, and later returned from leave, [*id.* at 3], but Count III neither refers to those facts nor explains how that injury relates to the accommodation she says was withdrawn. Nor does an injury, by itself,

---

[2] Count I also alleges no facts suggesting that any of the conduct it describes occurred because of Plaintiff's race or in response to activity protected by Title VII. *See Jacobs v. Biando*, 592 F. App'x 838, 841 (11th Cir. 2015) (affirming dismissal of a *pro se* complaint that did not allege facts supporting a reasonable inference that the supervisor's actions were motivated by racial animus, such as that similarly situated employees of another race were treated more favorably). Count II, which also appears to assert retaliation, suffers from the same defect. [D.E. 26 at 5–6].

establish a disability; the ADA requires a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A). Count III also does not describe the accommodation or allege that Plaintiff could perform the essential functions of her position with it. *See* 42 U.S.C. § 12111(8).

Count IV fares no better. It recounts a series of 2024 disputes with a supervisor: assignments to sell in states where Plaintiff was not licensed and resulting write-ups, a refusal to clock her in during a system outage, a disagreement over time to complete AHIP certification, the denial of bereavement leave, and her exclusion from asking questions at team meetings. [D.E. 26 at 7–9]. It ends with the labels "VII Retaliation," "Licensing issues," "Ahip, BCBS concerns," and "Potential Fines." [*Id.* at 9]. The count does not identify a protected characteristic, does not allege that Plaintiff opposed any practice made unlawful by Title VII, and does not connect any of the events it describes to the one legal theory it names. Plaintiff's objections to selling in states where she was unlicensed may reflect genuine regulatory concerns, but objections of that kind are not protected activity under Title VII. *See Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) ("Unfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII.").

Count V presents the closest question. It alleges that in February 2025 a regional manager accused Plaintiff of "stealing time" and told her to clock out at 5:30 p.m. and keep working; that in March 2025 the same manager told her that "you think your [sic] special because you are Black;" that human resources refused to take

her complaint about the manager; and that she has since been excluded from team meetings, trainings, and certification classes offered to other licensed agents. [D.E. 26 at 9–10]. These allegations come closer to stating a claim than anything else in the Amended Complaint. But the count again ends with a string of labels, including "VII Civil Rights Act 1964," "VII Retaliation," "Title 42," "Hostile work environment," and "Americans with Disabilities Act," without saying which theory rests on which facts. [*Id.* at 10–11]. Read generously, Count V could support a claim of race discrimination, retaliation, hostile work environment, or unpaid wages, and each has different elements. Defendant cannot be expected to answer, and the Court cannot evaluate, a count that may be any of several claims. If Plaintiff intends to pursue any of these theories, each must be pleaded in its own count, together with the facts that support it.

As with the Original Complaint, the overarching issue, and it is only one among many, is that the Court cannot determine which facts connect to which claims. While "[c]ertain paragraphs . . . sound in the vein of age discrimination, race discrimination, and disability discrimination, . . . the [Amended] Complaint requires the Court to engage in too much advocacy on the pro se plaintiff's behalf to ascertain precisely what the Complaint seeks to allege and specifically how the allegations satisfy the elements of each claim[.]" [D.E. 24 at 9 (citation modified)].

To give fair notice, a complaint should set out its facts in numbered paragraphs, place each legal claim in its own count, and, within each count, identify the facts that satisfy each element of that claim. The Court repeats that the federal

rules require "[a] party [to] state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Like its predecessor, the Amended Complaint is "an impermissible shotgun pleading that has failed to provide the Defendant with proper notice of the allegations against which it must defend." [D.E. 24 at 10]. Plaintiff will have one more opportunity to deliver a viable complaint before the Court. If Plaintiff fails, she will forfeit the opportunity to seek legal relief for the injuries she alleges to have sustained. In other word, Plaintiff will not be able to bring a lawsuit seeking relief in relation to any of the potential causes of action that may arise under the set of facts or circumstances giving rise to the claims she brings before the Court. *See* Fed. R. Civ. P. 41(b) (providing that, unless the dismissal order states otherwise, an involuntary dismissal operates as an adjudication on the merits).

The Court adds that, under 28 U.S.C. § 1654, individuals have a right to proceed pro se. But successful litigation demands extensive procedural and substantive legal knowledge. While the Court respects one's decision to proceed pro se, it also reminds Plaintiff that she is not forbidden from employing a legal professional to advocate on her behalf, should she decide to do so. And should she decide to proceed pro se, not every workplace grievance gives rise to a federal claim. It would be in her interest to isolate those specific actions that gave rise to tangible employment action in violation of specific statutory rights in her second and final amended complaint, which may better support her case for pleading a plausible complaint under Rule 8

Therefore, any second amended complaint must (1) set out its allegations in separately numbered paragraphs; (2) state each legal claim in a separate count that identifies the statute under which the claim arises; (3) within each count, identify the specific facts that support each element of that claim; (4) name the correct defendant entity; and (5) comply with the Court's Order of Instructions to Pro Se Litigants. [D.E. 5].

Plaintiff also asks the Court to sanction Defendant because the Court extended Defendant's time to respond and Defendant has not answered. [D.E. 30 at 4]. That request is denied on procedural and substantive grounds. First, Plaintiff did not properly bring the request before the Court. A request for a court order "must be made by motion," Fed. R. Civ. P. 7(b)(1), and a request for sanctions under Rule 11 "must be made separately from any other motion," Fed. R. Civ. P. 11(c)(2). Plaintiff filed no such motion. Second, the conduct Plaintiff describes does not warrant sanctions. The Court granted Defendant's requests for additional time, and Defendant then timely moved to dismiss, which postponed its obligation to answer until the Court rules on that motion. *See* Fed. R. Civ. P. 12(a)(4). Third, nothing in the record suggests the bad faith that is "[t]he key to unlocking a court's inherent power" to sanction. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Finally, Plaintiff's related request that the Court consider "appropriate relief or [an] evidentiary remedy" concerning the alleged destruction of her records, [D.E. 30 ¶ 10], is premature: there is no operative pleading (the Amended Complaint is dismissed

pursuant to this Order), and discovery has not begun. That request is therefore denied without prejudice.

### *III. CONCLUSION*

For the foregoing reasons, the Court **ORDERS** that Defendant's motion to dismiss [D.E. 29] is **GRANTED** in part and **DENIED** in part. The Amended Complaint is hereby **DISMISSED** without prejudice. Defendant's request that the dismissal be with prejudice is **DENIED**, and its alternative request for a more definite statement is **DENIED as moot**. Plaintiff's request for sanctions, [D.E. 30], is **DENIED**, and her request for relief concerning the alleged destruction of records is **DENIED without prejudice**. Plaintiff may file a second amended complaint that complies with this Order within twenty-one (21) days of the date of this Order. Failure to do so may result in dismissal of this action with prejudice and without further notice.

**DONE and ORDERED** in Chambers at Miami, Florida this 20th day of November, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge